Robert L. Greener, Esq.
LAW OFFICE OF ROBERT L. GREENER
112 Madison Avenue, 6th Floor,
New York, NY 10118
(646)415-8920 Phone
(212) 689-9680
rlg@greenerlegal.com
(RG8089)
Attorney for Plaintiff SREAM, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SREAM, INC, a California corporation,

                            Plaintiff

        v.

SC OF MID-HUDSON NY, INC.,

                       Defendant.

_____

Civil Action No.

COMPLAINT FOR
TRADEMARK
COUNTERFEITING,
TRADEMARK INFRINGEMENT,
FALSE DESIGNATIONS OF
ORIGIN AND DILUTION AND
UNFAIR COMPETITION

      Plaintiff Sream, Inc. ("Sream" or "Plaintiff"), by and through its attorneys of record, THE

LAW OFFICE OF ROBERT L. GREENER P.C. complaints against Defendant SC OF MID-

HUDSON NY, INC., ("Defendant"), alleging as follows:

## **JURISDICTION AND VENUE**

      1.     This is a civil action against Defendant for counterfeiting, trademark

infringement, false designation of origin and unfair competition under the Lanham Act (15

U.S.C. § 1051 *et seq.*

2.      This court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. §§ 1051 et seq., 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademark) and 28 U.S.C. § 1338(b) (unfair competition), and pendant jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) in that the claim arises in this Judicial District, the Defendant may be found and transact business in this Judicial District, and/or the injury suffered by Plaintiff took place in this Judicial District. Defendant are subject to the general and specific personal jurisdiction of this Court because of their contacts with the State of New York.

4.      This Court has personal jurisdiction over Defendant.  Amongst other things, Defendant has engaged in direct, contributory, vicarious, and/or otherwise induced trademark infringement and counterfeiting in this judicial district.  Further, Defendant has engaged in continuous and systematic business in New York and, upon information and belief, derive substantial revenues from commercial activities in New York.  Specifically, Defendant has (1) designed, manufactured, sourced, imported, offered for sale, sold, distributed, and/or shipped infringing and counterfeit merchandise to persons within this State in the ordinary course of trade; (2) engaged in acts or omissions outside of this state causing injury within the State; and/or (3) has otherwise made or established contacts with this State sufficient to permit exercise of personal jurisdiction.

## PARTIES

5.      Plaintiff SREAM is a corporation incorporated and existing under the laws of California, with its principle place of business located at 12869 Temescal Canyon Road, Suite B, Corona, California 92883.  Sream does business as "RooR USA."

6.      Defendant SC OF MID-HUDSON NY, INC. is a Domestic New York Corporation with a principle place of business located at 195 Lake Louise Marie Rd, PO Box 960, Rock Hill, New York, 12775. Defendant is a retail smoke shop d/b/a Smokers Choice. On information and belief, and as described infra, Defendant is engaged in the unlawful importation, manufacture, retail sale and/or wholesale sales of counterfeit RooR branded water pipes and related parts.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.      The RooR Business and Trademark.

7.      Headquartered in Germany since 1995, Mr. Martin Birzle d/b/a RooR ("RooR") is an award-winning designer and manufacturer of smoker's products.  RooR products are widely recognized and highly acclaimed for its ornate and innovative products, including its borosilicate jointed-glass water pipes, parts, and accessories related thereto.  Indeed, it is one of the leading companies in the industry and has gained numerous awards and recognition for its innovative products and designs.

8.      For nearly two decades, RooR distinguished itself as the premiere manufacturer of glass water pipes because of the Company's unwavering use of quality materials and focus on scientific principles to facilitate a superior smoking experience.  RooR's painstaking attention to detail is evident in many facets of authentic RooR products.  It is precisely because of the unyielding quest for quality and unsurpassed innovation that RooR products have a significant following and appreciation amongst consumers in the United States.

9.      Since at least 2011, Plaintiff Sream has been the exclusive licensee of the RooR Mark in the United States.  By the terms of the RooR-Sream agreement, Sream has manufactured water pipes under the RooR mark.  Sream also advertises, markets, and distributes water pipes, water pipe parts, and other smoker's articles in association with the RooR mark.  All of these activities are made with RooR's consent and approval, and in accordance with RooR's strict policies.

10.     RooR has spent substantial time, money and effort in developing consumer recognition and awareness of the RooR trademarks.  This recognition is also due, in part, to the collaborative efforts of Sream.  Through the extensive use of the mark, RooR and its exclusive licensee Sream, have built up and developed significant goodwill in the entire RooR product line.  A wide array of websites, magazines, and specialty shops include advertising of RooR's products which are immediately identifiable.  RooR (i.e., Mr. Martin Birzle) is the exclusive owner of federally registered and common law trademarks.  The following is a partial (non-exhaustive) list of RooR's trademarks:

U.S. Trademark Registration Number 3,675,839 for the word mark "RooR" and its logo in association with goods further identified in registration in international class 034.

U.S. Trademark Registration Number 2,307,176 for the word mark "RooR" and its logo identified below in association with goods further identified in the registration in international classes 025 and 034.

U.S. Trademark and Registration Number 2,235,638 for the word mark "RooR" and its logo identified below in association with goods further identified in the registration in international class 021.

Common law and unregistered state law rights in the following variants of the RooR marks:

4



(hereinafter collectively the "RooR Marks").

11.     The superiority of the RooR products is not only readily apparent to consumers, who yearn for RooR's higher quality glass in the marketplace, but to industry professionals as well.  RooR's unique style and functional superiority has earned the brand accolades in leading trade magazines and online publications.  Indeed, it's exactly because consumers recognize the quality and innovation associated with RooR branded products that consumers are willing to pay higher prices for them.  For example, a RooR-branded 45 cm water pipe retails for $300 or more, while a non-RooR product of equivalent size will usually sell for less than $100. In general, RooR products do not sell for less than $200, whereas non-RooR water pipes retail at an average of less than $50.

12.     It is exactly because of the higher sale value of RooR branded products that RooR products are targets of counterfeiters.  These unscrupulous entities tarnish the RooR brand by unlawfully affixing the RooR Marks to substantially inferior products, leading to significant illegitimate profits.  In essence, Defendant mislead consumers to pay premium prices for low

5

grade products that free rides on the RooR brand, and in turn, Defendant reaps substantial ill-gotten profits.

13.     In order to protect the RooR Marks, Sream has been granted all enforcement rights to sue to obtain injunctive and monetary relief for past and future infringement of the RooR Marks.

A.   Defendant's Unlawful Conduct:

14.     Beginning on a date that is currently unknown to Plaintiff and continuing to the present, Defendant has, without the consent of Plaintiff, offered to sell and sold within the United states (including within this judicial district) goods that were neither made by RooR nor by a manufacturer authorized by Plaintiff (such goods are hereafter referred to as "Counterfeit Goods" – examples of which are attached at exhibits A) using reproductions, counterfeits, copies and/or colorable imitations of one or more of the RooR Marks.  On information and belief, Plaintiff further alleges that Defendant imported said Counterfeit Goods into the United States, or encouraged others to import said Counterfeit Goods into the United States, for the purpose of reselling the Counterfeit Goods in the United States.

15.     Thus, Plaintiff is informed and believes and, upon such, alleges that, in order to receive higher profit margins, Defendant has held itself out – through the counterfeit products it carries -  to be sponsored by, affiliated with, and/or otherwise connected with RooR / Sream. Specifically, Defendant has advertised, offered for sale, sold, distributed, displayed, and/or have affixed the RooR Marks to water pipes without consent, license, or approval.  In so doing, Defendant has sold fake RooR's out of Defendant's stores and/or distributed the same with

inferior materials and inferior technology.

16.     In its ongoing investigation of counterfeit sales of the Plaintiff's products,
Plaintiff's investigator purchased several "RooR" glass pipes from Defendant, charged to the
account of Plaintiff's investigator. True and correct copies of the counterfeit products purchased
from Defendant as well as the purchase receipts are attached hereto as **Exhibit "A".**

A. On October 28, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe from
Smokers Choice #21, charged to the account of Plaintiff's investigator. Upon
visual inspection of six glass pipes, plaintiff's investigator identified the pipes
bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased
is identified as a clear glass pipe, approximately 14.5 inches tall, it has the RooR
logo on the tube of the pipe, the logo is yellow, and the base of the pipe is
approximately 5 inches in width. There are three indentations in the tube of this
pipe located below the logo. There is a design comprised of a wavy line and a dot
located on the base of the pipe, the color of the design is black. The price label is
affixed to this pipe and identifies the price as $179.99 plus tax. The craftsmanship
is not at the standard or quality of any RooR pipe. RooR does not produce any
pipes of these specifications at this price point. See exhibit A.

B. On September 1, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe
from Smokers Choice #22, charged to the account of Plaintiff's investigator.
Upon visual inspection of four glass pipes, plaintiff's investigator identified the
pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator
purchased is identified as a clear glass pipe with a stem, approximately 14 inches
tall, it has the RooR logo on the tube of the pipe, the logo is green, and the base of
the pipe is approximately 4 ½ inches in width. There are three indentations in the
tube of the pipe located below the logo and a design, of a green wavy line next to
a green dot, located on the side of the pipe below the indentations. The price label
is affixed to this pipe and identifies the price as $179.99 plus tax and displays the
number 5056. The craftsmanship is not at the standard or quality of any RooR
pipe. RooR does not produce any pipes of these specifications at this price point.
See exhibit B.

C. On August 31, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe from
Smokers Choice #24, charged to the account of Plaintiff's investigator. Upon
visual inspection of three glass pipes, plaintiff's investigator identified the pipes
bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased

7

is identified as a clear glass pipe with a bowl, approximately 17 ½ inches tall, it has the RooR logo on the tube of the pipe, the logo is grey, and the base of the pipe is approximately 5 inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of an orange wavy line next to a green dot, located on the side of the pipe below the indentations. The price label is affixed to this pipe and identifies the price as $169.99 plus tax and displays the numbers 2404. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit C.

D. On September 1, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #27, charged to the account of Plaintiff's investigator. Upon visual inspection of seven glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a bowl but no stem, approximately 17 ½ inches tall, it has the RooR logo on the chamber of the pipe, the logo is green, and the base of the pipe is approximately 5 inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a yellow wavy line next to a white dot, located on the side of the pipe below the indentations. Two price labels are affixed to this pipe, one on the tube and one on the base and identify the price as $169.99 and each displays the numbers 2404. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit D.

E. On September 1, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #28, charged to the account of Plaintiff's investigator. Upon visual inspection of eight glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 18 ½ inches tall, it has the RooR logo on the tube of the pipe, the logo is blue, and the base of the pipe is approximately 4 ½ inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a blue wavy line and three blue dots opposite another blue dot, located on the sides of the pipe below the indentations. There is a sticker affixed to the bottom of this pipe which displays RCY-18/50 and the price label is affixed to the tube of this pipe and identifies the price as $179.99 and displays the numbers 2403. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit E.

F.  On September 1, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #32, charged to the account of Plaintiff's investigator. Upon visual inspection of the one glass pipe, plaintiff's investigator identified the pipe bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 18 inches tall, it has the RooR logo on the tube of the pipe, the logo is yellow, and the base of the pipe is approximately 5.5 inches in width. There are three indentations in the tube of the pipe located below the logo and there is a design consisting of a wavy line and a dot located on the base of the pipe, the color of the design is black. The price label is affixed to the tube of this pipe, placed over another price label, and identifies the price as $179.99. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit F.

G.  On August 31, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #34, charged to the account of Plaintiff's investigator. Upon visual inspection of the one glass pipe, plaintiff's investigator identified the pipe bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 18 inches tall, it has the RooR logo on the tube of the pipe, the logo has three colors, red, yellow and green, and the base of the pipe is approximately 5 inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a yellow wavy line next to a green and red dot, located on the side of the pipe below the indentations. Three price labels are affixed to this pipe and identify the price as $199.99, two of the labels display the numbers 2735 and one does not. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit G.

H.  On January 18, 2017, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #39, charged to the account of Plaintiff's investigator. Upon visual inspection of four glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe, approximately 17 ¼ inches tall, it has the RooR logo on the tube of the pipe, the logo is green and the base of the pipe is approximately 5 inches in width. There are three indentations in the tube of the pipe, below the logo and a design, of a yellow wavy line next to a white dot on the side of the pipe below the indentations. There are two price labels affixed to this pipe, one on top of and partially covering the other. The top price label identifies the price as $115.00 plus tax and displays the numbers 8907 and the bottom price label displays the $ symbol a . and the letters TX. The craftsmanship is not at the

9

standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit H.

I. On January 17, 2017, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #40, charged to the account of Plaintiff's investigator. Upon visual inspection of four glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 17 ½ inches tall, it has the RooR logo on the tube of the pipe, the logo is green, and the base of the pipe is approximately 5 inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a wavy yellow line next to a white dot, located on the side of the pipe below the indentations. A price label is affixed to this pipe and identifies the price as $169.99 and displays the number 2404. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit I.

J. On September 1, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #41, charged to the account of Plaintiff's investigator. Upon visual inspection of three glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 17 ½ inches tall, it has the RooR logo on the tube of the pipe, the logo is black, and the base of the pipe is approximately 5 inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a green wavy line next to a red dot, located on the side of the pipe below the indentations. The price label is affixed to this pipe and identifies the price as $179.99 plus tax and displays the numbers 2403. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit J.

K. On January 18, 2017, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #42, charged to the account of Plaintiff's investigator. Upon visual inspection of three glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a blue mouthpiece, approximately 15 inches tall, it has the RooR logo on the top and bottom half of the pipe, the logos have three colors red, yellow and green and say TECH on the bottom R and the base of the pipe is approximately 3 ¾ inches in width. There is a green disk located in the base of the pipe and the disk has five openings on its surface. The craftsmanship

is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit K.

L.  On September 1, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #44, charged to the account of Plaintiff's investigator. Upon visual inspection of four glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 18 inches tall, it has the RooR logo on the tube of the pipe, the logo is black, and the base of the pipe is approximately 5 ½ inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a black wavy line next to a black dot, located on the side of the pipe below the indentations. The price label is affixed to this pipe and identifies the price as $179.99 plus tax and displays the numbers 2403. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit L.

M.  On January 17, 2017, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #46, charged to the account of Plaintiff's investigator. Upon visual inspection of nine glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 8 ¼ inches tall, it has the RooR logo on the tube of the pipe, the logo has three colors, red, yellow and green, and the base of the pipe is approximately 3 ¾ inches in width. There are three indentations in the tube of the pipe located below the logo and there is a percolator in the tube of this pipe. A price label is affixed to this pipe and identifies the price as $49.99 and displays the numbers 2076. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit M.

N.  On January 17, 2017, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #54, charged to the account of Plaintiff's investigator. Upon visual inspection of eight glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 17 ½ inches tall, it has the RooR logo on the tube of the pipe, the logo is black, and the base of the pipe is approximately 5 inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a wavy green line next to a red dot, located on the side of the pipe below the indentations. A price label is affixed to this pipe and identifies the price as $169.99 plus tax and displays the number 2404. The craftsmanship is not at the standard or quality of any RooR pipe. RooR

11

does not produce any pipes of these specifications at this price point. See exhibit N.

O. On January 18, 2017, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #59, charged to the account of Plaintiff's investigator. Upon visual inspection of four glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 14 inches tall, it has the RooR logo on the tube of the pipe, the logo is yellow, and the base of the pipe is approximately 5 ½ inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a blue wavy line, located on the side of the pipe below the indentations. The price label is affixed to this pipe and identifies the price as $149.99 plus tax, and displays the numbers 1254. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit O.

P. On January 18, 2017, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #61, charged to the account of Plaintiff's investigator. Upon visual inspection of three glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 14 inches tall, it has the RooR logo on the tube of the pipe, the logo is yellow and the base of the pipe is approximately 5 ½ inches in width. There are three indentations in the tube of the pipe below the logo and a design, of a blue wavy line, on the side of the pipe below the indentations. There is a price label affixed to this pipe which identifies the price as $149.99 and displays the numbers 1254. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit P.

Q. On January 18, 2017, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #62, charged to the account of Plaintiff's investigator. Upon visual inspection of three glass pipes, plaintiff's investigator identified the pipes bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 18 ¾ inches tall, it has the RooR logo on the tube of the pipe, the logo is red, and the base of the pipe is approximately 5 ¼ inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a wavy red line next to a red dot, located on the side of the pipe below the indentations. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit Q.

R. On September 1, 2016, Plaintiff's investigator purchased 1 "RooR" glass pipe from Smokers Choice #64, charged to the account of Plaintiff's investigator. Upon visual inspection of one glass pipe, plaintiff's investigator identified the pipe bearing a RooR logo as counterfeit. The pipe the plaintiff's investigator purchased is identified as a clear glass pipe with a stem, approximately 18 inches tall, it has the RooR logo on the tube of the pipe, the logo is grey, and the base of the pipe is approximately 5 ½ inches in width. There are three indentations in the tube of the pipe located below the logo and a design, of a black wavy line next to a black dot, located on the side of the pipe below the indentations. The price label is affixed to this pipe and identifies the price as $169.99 and displays the numbers 2404. The price label affixed to the diffuser identifies the price as $18.99 and displays the numbers 3018. The craftsmanship is not at the standard or quality of any RooR pipe. RooR does not produce any pipes of these specifications at this price point. See exhibit R.

17. Defendant has intentionally and knowingly directed payments for the counterfeit items to be made to itself within this Judicial District.

18. Through such business activities, Defendant purposely derived direct benefits from its interstate commerce activities by targeting foreseeable purchasers in the State of New York, and in doing so, have knowingly harmed Plaintiff.

19. Defendant uses images and names confusingly similar or identical to the RooR mark to confuse customers and aid in the promotion and sales of its unauthorized and counterfeit product.  Defendant's use of the RooR Marks includes importing, advertising, displaying, distributing, selling and/or offering for sale unauthorized copies of RooR branded products.

20. Defendant's use began long after RooR's adoption and use of its trademarks, and after RooR obtained the trademark registrations alleged above.  Neither Plaintiff nor any

13

authorized agents have consented to Defendant's use of the RooR Marks.

21.     Defendant's actions have confused and deceived, or threatened to confuse and deceive, the consuming public concerning the source and sponsorship of the Counterfeit RooR-branded products sold and distributed by Defendant.  By its wrongful conduct, Defendant has traded upon and diminished the goodwill of the RooR marks.  Furthermore, the sale and distribution of counterfeit goods by Defendant has infringed upon the above-identified federally registered trademarks.

22.     Defendant offering to sell, selling, importing and encouraging others to import counterfeit goods in this manner was and is likely to cause confusion or to cause mistake and/or deceive consumers who purchase the counterfeit goods.

23.     Defendant also offered to sell, sold, imported, and/or encouraged others to import for purpose of resale within the United States counterfeit goods consisting of reproductions and/or copies of products bearing the RooR Marks.  Defendant's use the RooR Marks were done without Plaintiff's authorization.

## FIRST CAUSE OF ACTION
### (Trademark Infringement, 15 U.S.C. §§ 1114 against Defendant)

24.     Plaintiff incorporates here by reference the allegations in paragraphs 1 through 23 above.

25.     RooR (i.e., Mr. Martin Birzle) is the legal owner of the federally registered RooR Marks as set forth in more detail in the foregoing paragraphs.  Sream is the exclusive licensee of

the RooR Marks in the United States, and has been granted all enforcement rights to obtain

injunctive and monetary relief for past and future infringement of the RooR Marks.

26.     The RooR Marks are valid, protectable and distinctive trademarks that RooR

continuously used to promote its goods for almost two decades, of which Sream has participated

in since at least 2011.  Plaintiff is informed and believes and thereon alleges that a substantial

segment of the relevant purchasing public recognizes the "RooR" mark as coming from and/or

affiliated with RooR, and its exclusive U.S. licensee, Sream.

27.     Defendant has used marks confusingly similar to RooR's federally registered

RooR Marks in violation of 15 U.S.C. § 1114.  Specifically, and as described *supra*, and as

shown in Exhibit A, Defendant has sold a counterfeit water pipe bearing one or more of the

RooR Marks, and has passed off such counterfeits as authorized products from RooR /Sream.

However, the Defendant wasn't provided a license, permission, consent to sell counterfeit

products by the rights holders to the RooR Marks and/or it exclusive licensee Sream.

28.     By such actions, each Defendant's use of confusingly similar imitations of the

RooR Marks mark is likely to cause confusion, deception, and mistake by creating the false and

misleading impression that Defendant's products are manufactured, produced, distributed,

endorsed, sponsored, approved, or licensed by RooR, or are associated or connected with RooR

and/or Sream.  Plaintiff is informed and believes and thereon alleges that the Defendant utilized

the RooR Marks mark in order to create consumer confusion, and have in-fact created consumer

confusion, including but not limited to initial interest confusion and confusion as to an

affiliation or association between RooR and Plaintiff, on the one hand, and of the Defendant on

15

the other.

29.     At no time did the Defendant have the authorization, legal right, or consent to engage in such activities in disregard of RooR / Sream's rights in the RooR Marks.

30.     The Defendant's actions complained of herein were intentional, willful, and malicious with a deliberate intent to trade on the goodwill associated with the federally registered RooR Marks.

31.     Plaintiff is informed and believes and thereon alleges that as a proximate result of the unfair advantage accruing to the Defendant's business from deceptively trading on RooR / Sream's advertising, sales, and consumer recognition, the Defendant has made substantial sales and profits by selling counterfeit water pipes bearing the RooR Marks, in amounts to be established according to proof.

32.     As a proximate result of the unfair advantage accruing to the Defendant's business from deceptively trading on RooR / Sream's advertising, sales, and consumer recognition, RooR / Sream have been damaged and deprived of substantial sales and has been deprived of the value of its trademark as a commercial asset, in amounts to be established according to proof.

33.     Plaintiff is informed and believes, and thereon alleges that, unless restrained by the Court, the Defendant will continue to infringe the RooR Marks, thus engendering a multiplicity of judicial proceedings, and that pecuniary compensation will not afford Plaintiff

adequate relief for the damage to its trademark in the public perception.  Further, Plaintiff is informed and believes and thereon alleges that in the absence of injunctive relief, customers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of the Defendant and its goods.

34.     Plaintiff is informed and believes and thereon alleges that the Defendant's acts were committed, and continue to be committed, with actual notice of RooR / Sream's exclusive rights and with an intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with RooR / Sream and RooR products.  At a minimum, Plaintiff is entitled to injunctive relief and to recover the Defendant's profits, actual damages, enhanced profits, and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114 and 1116.  However, given the intentional acts here Plaintiff is entitled to recover three times its actual damages or three times Defendant's profits, whichever is greater, together with Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1117.  In addition, pursuant to 15 U.S.C. § 1118, Plaintiff is entitled to an order requiring destruction of all infringing materials in each Defendant's possession.

## SECOND CAUSE OF ACTION
### (Trademark Counterfeiting, 15 U.S.C. §§ 1116)

35.     Plaintiff incorporates here by reference the allegations in paragraphs 1 through 34 above.

36.     Counterfeiting has been recognized as a serious issue resulting in tremendous losses to American businesses.  To combat counterfeits, Congress passed the "Anti-counterfeiting Consumer Protection Act of 1966" (ACPA).

37.     New York has a similar rule under General Obligations Law § 349.

38.     Defendant's actions also constitute the use by Defendant of one or more "counterfeit mark" as defined in 15 U.S.C. §1116(d)(1)(B).

39.     The Defendant's unauthorized use of the RooR Marks on counterfeit products that they have distributed has caused and is causing consumer confusion about the source and sponsorship of these counterfeit goods.

40.     The Defendant's sales of these counterfeit products has caused considerable damage to the goodwill of RooR / Sream and diminished the brand recognition of the RooR.

41.     The sales of these counterfeit products by Defendant have further resulted in lost profits to Sream and have resulted in a windfall for Defendant.

42.     Plaintiff reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(1) and/or (2).

43.     Because of the willful nature of the counterfeiting, Plaintiff is entitled to an award of statutory damages of up $2,000,000 per mark infringed under 15 U.S.C. §§ 1117(c)(2).

44.     In the alternative, and at a minimum, Plaintiff is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits, and treble damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1117(b).

18

45.     The acts of direct and/or contributory counterfeiting committed by Defendant have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined by this Court.

### THIRD CAUSE OF ACTION
### (False Designation of Origin/Unfair Competition, 15 U.S.C. § 1115(a))

46.     Plaintiff incorporates here by reference the allegations in paragraphs 1 through 45 above.

47.     The Defendant caused to enter into interstate commerce water pipes that the Defendant marketed through use of marks that is confusingly similar to the unregistered variants of the RooR Marks.  Plaintiff is informed and believes and thereon alleges that unregistered variants of the RooR Marks have become associated in the minds of consumers with RooR / Sream and their respective RooR goods.

48.     The marketing and sale of Defendant's water pipes as described above constitutes false designation of origin which is likely to cause confusion and mistake and to deceive consumers as to the source or origin of such goods or sponsorship or approval of such goods by RooR / Sream.

49.     Plaintiff is informed and believes and thereon alleges that as a proximate result of Defendant's false designation of origin, the Defendant stands to make substantial sales and profits in amounts to be established according to proof.

50.     Plaintiff is informed and believes and thereon alleges that as a proximate result of Defendant's false designation of the origin of their goods and services, Plaintiff has been

damaged and deprived of substantial sales of its goods and has been deprived of the value of its trade dress as commercial assets, in amounts to be established according to proof.

51.     Plaintiff is informed and believes and thereon alleges that unless restrained by this Court, the Defendant will continue to designate falsely the origin of their goods, causing irreparable damage to Plaintiff and engendering a multiplicity of lawsuits.  Pecuniary compensation will not afford Plaintiff adequate relief for its resulting damages.  Further, Plaintiff is informed and believes and thereon alleges that in the absence of injunctive relief, customers are likely to continue being mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Defendant's goods and services.

52.     Plaintiff is informed and believes and thereon alleges that the Defendant's acts were committed, and continue to be committed, with actual notice of RooR / Sream's exclusive rights and with intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with RooR / Sream and genuine RooR products.  Pursuant to 15 U.S.C. § 1117, Plaintiff is, therefore, entitled to recover three times its actual damages or three times the Defendant's profits, whichever is greater, together with Plaintiffs attorneys' fees.  In addition, pursuant to 15 U.S.C. § 1118, Plaintiff is entitled to an order requiring destruction of all infringing materials in Defendant's possession.

## FOURTH CASUE OF ACTION
## (NEW YORK TRADEMARK DILUTION (New York General Business Law § 360(1))

53.     Plaintiff repeats and realleges Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.     Defendant's acts have caused damage to Plaintiff by tarnishing Plaintiff's valuable reputation and diluting or blurring the distinctiveness of Plaintiff's RooR / Sream Trademarks in violation of New York General Business Law § 360(1), and will continue to tarnish and destroy the value of Plaintiff's RooR / Sream Trademark unless enjoined by this Court. Plaintiff has no adequate remedy at law.

### FIFTH CASUE OF ACTION
### (Unlawful Deceptive Acts and Practices (New York General   Business Law § 349))

55.     Plaintiff repeats and realleges Paragraphs 1 through 54 of this Complaint as if fully set forth herein. Upon information and belief, Defendant, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the RooR / Sream Trademark, has manufactured, advertised, distributed, offered for sale and/or sold the Infringing Products to the consuming public in direct competition with Plaintiff's Products.

56.     Defendant's use of actual copies or simulations of the RooR / Sream Trademark is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products being sold by Defendant originate from, are associated with, or are otherwise authorized by Plaintiff.

57.     Defendant's deceptive acts and practices involve public sales activities of a recurring nature.

21

58.     Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## SIXTH CAUSE OF ACTION
### (Unfair Competition Under New York State Law)

59.     Plaintiff repeats and realleges Paragraphs 1 through 60 of this Complaint as if fully set forth herein.

60.     Plaintiff has built up valuable goodwill in the RooR / Sream Trademark.

61.     Defendant's use of the Plaintiff's marks infringes upon Plaintiff's RooR / Sream Trademark and is likely to and does permit Defendant to palm off the Infringing Products as those of Plaintiff, all to the detriment of Plaintiff and the unjust enrichment of Defendant.

62.     Upon information and belief, Defendant, with full knowledge of the fame of the RooR / Sream Trademark, intended to, and did, trade on the goodwill associated with the RooR / Sream Trademark and has misled and will continues to mislead the public into assuming a connection between Plaintiff and Defendant by Defendant's advertising, selling and/or distributing of the Infringing Products.

63.     Defendant's unauthorized use of marks that infringe upon Plaintiff s RooR / Sream Trademark has caused, and is likely to continue to cause, Plaintiff damage by tarnishing the valuable reputation and images associated with Plaintiff and its genuine goods.

22

64.    The acts of Defendant, which permit and accomplish confusion, mislead and deceive the public as to the source of the Infringing Products, permit and accomplish palming off of the Infringing Products as those of Plaintiff s and falsely suggest a connection with Plaintiff, constitute acts of unfair competition with Plaintiff in violation of the laws of the State of New York.

65.    Defendant's acts have caused and will continue to cause Plaintiff irreparable harm unless enjoined by this Court. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests the following relief as to each of the above causes of action:

1.    That Defendant, its officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be enjoined and restrained and thereafter, permanently enjoined:

a. from using in any manner the marks which infringe upon Plaintiff's RooR / Sream Trademark, as to be likely to cause confusion, deception, or mistake on or in connection with the manufacturing, advertising, distributing, offering for sale, or selling of any product not Plaintiff s, or not authorized by Plaintiff to be sold in connection with each of Plaintiff s products;

      b.  from passing off, inducing, or enabling others to sell or pass off any product as and for products produced by Plaintiff, not Plaintiff's, or not produced under the control and supervision of Plaintiff and approved by Plaintiff for sale under the RooR / Sream Trademark;

      c.  from committing any acts calculated to cause purchasers to believe that the Infringing Products are those sold under the control and supervision of Plaintiff, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Plaintiff;

      d.  from further diluting and infringing the RooR / Sream Trademarks, and damaging Plaintiff's goodwill;

      e.  from otherwise competing unfairly with Plaintiff in any manner;

2.     That Defendant be required to forthwith deliver up for destruction its entire inventory of the Infringing Products and any advertising or promotional materials bearing the RooR / Sream Trademark or a confusingly similar copy thereof.

3.     That Defendant cause to be disabled any DRL on-line shopping or retail stores or sites that have or coating any products that are either Plaintiff's manufactured products or branded by Plaintiff as RooR / Sream.

4.      That Defendant, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner in which Defendant have complied with paragraphs 1, 2, and 3 supra.

5.      That Defendant accounts for and pays over to Plaintiff profits realized by Defendant by reason of Defendant's unlawful acts herein alleged and, that the amount of damages for infringement of Plaintiff's RooR / Sream Trademarks be increased by a sum of treble damages under 15 U.S.C. §§ 1117(b); and /or up to $ 2,000,000 under the ACPA.

6.      A Finding that That Defendant's Infringing Products infringe Plaintiff s RooR / Sream Trademarks.

7.      That Plaintiff be awarded punitive damages.

8.      That Plaintiff be awarded be awarded costs and disbursements of this action, together with reasonable attorney fees under section 15 U.S.C. §§ 1117(b), and New York Law.

9.      That Plaintiff be awarded such other and further relief as the Court may deem

equitable, including, but not limited to, any relief set forth under Sections 34-39 of the

1946 Trademark Act.


Dated:   December 11, 2017
          New York, New York

                                        Respectfully submitted,
                                        LAW OFFICE OF ROBERT L. GREENER

                                            S/ROBERT L GREENER/S
                                        _____
                                        ROBERT L. GREENER, ESQ(RG8089)
                                        *Attorney for Plaintiff*
                                        112 Madison Avenue, 6th Floor
                                        New York, NY 10118
                                        (646) 415-8920
                                        (212)689-9680